UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TINAMARIE BARRALES, | Case No. 2:25-cv-01171-HDV-KES |
|---|---|
| Plaintiff, | **ORDER RE: DEFENDANT NEW CHAPTER, INC.'S MOTION TO DISMISS [15]** |
| v. | |
| NEW CHAPTER, INC., | |
| Defendant. | |

1

I.     INTRODUCTION

This putative class action asserts that the labeling of Defendant New Chapter Inc.'s Fiber Gummies is false and misleading. More specifically, Plaintiff contends (1) that the claim of "with 4g of probiotic fiber" is false because it implies that *each gummy* contains that amount of fiber; and (2) that the KIDS Organic Fiber Gummies falsely implies that the product is specifically formulated or uniquely suitable for kids. The class action complaint advances claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), as well as claims for breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation, and unjust enrichment/quasi-contract. Complaint ¶¶ 32–45, 69–144 [Dkt. No. 1]

Before the Court is Defendant's Motion to Dismiss ("Motion") [Dkt. No. 15]. Defendant seeks dismissal on the basis of a full cannonade of jurisdictional and substantive arguments under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons discussed below, the Motion is denied.

II.    BACKGROUND

In 2024, Plaintiff Tinamarie Barraless purchased two of Defendant New Chapter, Inc.'s products: the New Chapter Organic Fiber Gummies ("Fiber Gummies") and the New Chapter Kids Organic Fiber Gummies ("Kids Gummies"). Complaint ¶ 32 [Dkt. No. 1]. The front label of the Fiber Gummies includes the line "with 4 g PREBIOTIC FIBER" as shown below:



*Id.* at ¶ 15. The front label of the Kids Gummies has the word "kids" with each letter a different color, as shown below:

2



*Id.* Based on the front label of the Fiber Gummies, Plaintiff believed that each gummy contained four grams of fiber. *Id.* at ¶ 17. In fact, the Fiber Gummies contained four grams of fiber *per serving* (defined as two gummies), *i.e.*, each gummy contained only two grams of fiber. *Id.* at ¶¶ 17, 33.[1] Based on the front label of the Kids Gummies, Plaintiff believed they featured something that made them uniquely suitable for kids. *Id.* at ¶ 21. Instead, the Kids Gummies have the exact same chemical composition and consumption method as the Fiber Gummies. *Id.* at 23.

On February 11, 2025, Plaintiff filed this putative class action complaint alleging that the representations made by Plaintiff on the product labels were false or misleading, bringing claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), as well as claims for breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation, and unjust enrichment/quasi-contract. Complaint ¶¶ 32–45, 69–144 [Dkt. No. 1].

On April 11, 2025, Defendant brought the instant Motion. On May 15, 2025, the Court held oral argument and took the Motion under submission [Dkt. No. 21].

### III.   LEGAL STANDARD

---

[1] Plaintiff also makes this same class claim relating to three other products: New Chapter All-Flora Probiotic Gummies ("Probiotic Gummies"), New Chapter Cellular Energy Vitamin B12+ Gummies ("B12 Gummies"), and New Chapter Berberine 1,000 mg Tablets ("Berberine Tablets"). Complaint ¶¶ 14, 15.

3

**A. Fed. R. Civ. P. 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge an initial pleading for lack of subject matter jurisdiction. This includes challenges for lack of standing. *See Unified Data Services, LLC v. Federal Trade Commission*, 39 F.4th 1200, 1209 (9th Cir. 2022).

Article III of the Constitution limits the power of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. A prerequisite for a case or controversy is that the plaintiff must have a personal stake in the action, better known as standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A plaintiff has standing if it can plausibly allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct [that is] likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668–69 (2021). Standing requires: (1) an "injury in fact"—*i.e.*, an injury that is "concrete, particularized, and actual or imminent"; (2) traceability—*i.e.*, "that the injury was likely caused by the defendant"; and (3) redressability—*i.e.*, "that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

**B. Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss all or some claims from a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Only where a plaintiff fails to "nudge[ ] [his or her] claims ... across the line from conceivable to plausible" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680. In other

words, dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

IV. **DISCUSSION**

   **A. Standing**

Defendant's first argument is a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) asserting that Plaintiff has not adequately pled an injury in fact and therefore lacks standing to sue, either individually or on behalf of the class. Motion at 18. The argument is unpersuasive.

An "injury in fact" must be real and concrete, not abstract. *TransUnion* at 424. The classic concrete injuries are tangible harms, such as physical or monetary harms, but a plethora of intangible harms are also considered concrete for standing purposes. *Id.* at 424–25. "The Ninth Circuit has repeatedly held that when a consumer alleges that she would not have purchased property, or would have paid less for it had the seller not misrepresented the property…the consumer has plausibly alleged an injury-in-fact." *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 764 (C.D. Cal. 2022) (citing *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016)). For purposes of ruling on a motion to dismiss for want of standing, both the trial court and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

Plaintiff has met her burden on standing.[2] Plaintiff alleges that the Fiber Gummies made an

---

[2] Defendant also moves to dismiss the nationwide class for lack of standing and to strike the nationwide class allegations. Motion at 20–21. Defendant argues that Plaintiff cannot bring California state law claims on behalf of non-California class members because the non-California members would have to bring state law claims under the law of the states under which their claim accrues. *Id.* And since Plaintiff does not have standing to invoke foreign laws, the non-California class must be dismissed or struck, or so the theory goes. *Id.* The Court disagrees. It is true that district courts in this circuit have diverged on this question. *Compare Chebul v. Tuft and Needle, LLC*, No. 2:24-cv-02707-JLS-MAR, 2024 WL 5257021, at *4–5 (C.D. Cal. Oct. 9, 2024) *with Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1043–1044 (C.D. Cal. 2022). The circuit case relied on by Defendant (and in other cases reaching Defendant's preferred result) was decided at the class certification stage, reviewing in-depth factual inquiry vis-à-vis choice and conflict of law. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F. 3d 581, 589–94 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.

affirmative representation that each gummy contained 4 grams of fiber, that in fact each gummy contains only two grams, and that Plaintiff relied on that alleged misrepresentation in purchasing them. Complaint ¶¶ 17–19, 32–34. Plaintiff also alleges that the Kids Gummies made an affirmative statement that they are uniquely suitable for kids, that in fact the Kids Gummies are identical in every way to the non-Kids-labeled gummies, and that Plaintiff relied on the misrepresentation in purchasing them. Complaint ¶¶ 19–23, 32, 35. Taking these material allegations as true, it is hard to imagine what else Plaintiff could have included. She has adequately alleged injury in fact.

Defendant's reliance on *McGee v. S-L Snacks National*, 982 F.3d 700, 706 (9th Cir. 2020) is misplaced. In *McGee*, the plaintiff failed to make any allegations regarding an affirmative misrepresentation about safety, and instead had simply assumed things about the product that allegedly ended up being untrue. ("McGee does not contend that Diamond made any representations about Pop Secret's safety. Although she may have assumed that Pop Secret contained only safe and healthy ingredients, her assumptions were not included in the bargain…Absent some allegation that Diamond made false representations about Pop Secret's safety, McGee's benefit of the bargain theory falls short."). Here, Plaintiff *does* allege what the Ninth Circuit found lacking in *McGee*—namely, allegations that Defendant made affirmative misrepresentations that Plaintiff relied on. Complaint ¶ 17 ("Contrary to the prominently advertised dosage amount on each of the Products' labels, each gummy or tablet contains only a fraction of the advertised dosage amount."), ¶ 21 ("However, the Kids Organic Fiber Gummy product is advertised as specially formulated for "kids"

---

2022) ("***Under the facts and circumstances of this case***, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place.") (emphasis added). In a more recent case, the Ninth Circuit clarified that Defendant's argument is more appropriate at the class certification stage. *See Melendres v. Arpaio*, 784 F.3d 1254, 1262–63 (9th Cir. 2015) ("Defendants argue only that no named plaintiff has 'standing' to represent the claims of unnamed plaintiffs…[b]ut this argument raises the question of class certification—i.e., whether the named plaintiffs are adequate representatives of the claims of the unnamed plaintiffs—not a question of standing.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156–58 & fn. 13, 15 (1982)). The Court therefore declines to address the argument at this point in the litigation. Defendants are free to raise their arguments related to non-California class members at that later phase.

6

or otherwise uniquely suitable for kids. Based on the different marketing and labeling on the front of the Kids Organic Fiber Gummies product and the labeling on the front of the regular Organic Fiber Gummies product, reasonable consumers believe that there is something different about the products that makes the Kids Organic Fiber Gummies product better suited or more appropriate for kids.").

Defendant also challenges Plaintiff's standing to bring class claims relating to the Probiotic Gummies, B12 Gummies, and Berberine Tablets because Plaintiff never in fact purchased those productions. Motion at 19–20. Again, the argument is not persuasive.

District courts in the Ninth Circuit are divided on whether plaintiffs have Article III standing to bring claims for products they did not personally purchase but that were purchased by unnamed class members. *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534-PSG-(JCx), 2018 WL 6714323, at *5 (C.D. Cal. Oct. 17, 2018) (collecting cases). The "prevailing view" is that plaintiffs can satisfy Article III for products they did not purchase so long as the products and alleged misrepresentations are "substantially similar." *Cho v. Hyundai Motor Company, Ltd.*, 636 F. Supp. 3d 1149, 1179–1180 (C.D. Cal. 2022). If the products are "sufficiently similar, any concerns regarding material differences in the products can be addressed at the class certification stage." *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1116 (N.D. Cal. 2022). The factors to consider are whether "(1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar." *Id.*

This Court has adopted the prevailing view and accepted substantial similarly in the standing context. *See Leon v. Honda Motor Co., Ltd.*, No. 2:24-cv-07872-HDV-(PVCx), 2025 WL 924689, at *5 fn. 3 (C.D. Cal. Mar. 11, 2025). Here, the Probiotic, Vitamin B12, and Berberine Gummies— *i.e.*, the products not purchased—are substantially similar to the Fiber and Kids Gummies purchased by the Plaintiff. They are all packaged products made up of units advertised to contain a particular amount of a dietary supplement. Complaint ¶¶ 14–15. The misrepresentations alleged are likewise substantially similar, at least for one of the purchased products: Plaintiff alleges that the Fiber Gummies, Probiotic Gummies, B12 Gummies, and Berberine Tablets all make affirmative misrepresentations on the front of their labels regarding the nutrient content of each unit in the

7

package. *See e.g.*, Complaint ¶¶ 16–18. The differences in the particular nutrient are immaterial to the claim or injury, and they can otherwise be raised at the class certification stage.

### B. Preemption

Next, Defendant contends that Plaintiff's claims are preempted by the Food, Drug, and Cosmetic Act ("FDCA"). Motion at 11–15. Specifically, Defendant maintains that the FDCA expressly allows claims made by serving size, and therefore permits the disputed claim made about the 4g of fiber. *Id.* The Court disagrees.

"Th[e] Constitution, and the laws of the United States which shall be made in pursuance thereof…shall be the supreme law of the land[.]" U.S. Const. art. VI, cl. 2. Better known as the "Supremacy Clause," this text forms the basis of preemption doctrine, or the directive that federal law preempts state law. *See Gibbons v. Ogden*, 9 Wheat. 1 (1824). There is an assumption against preemption unless Congress's intent to do so was "clear and manifest." *Hawkins v. Kroger Company*, 906 F.3d 763, 769 (9th Cir. 2018). The Food, Drug and Cosmetic Act ("FDCA")—as amended by the Nutritional Labeling and Education Act ("NLEA")—sets "uniform food labeling requirements" and provides that "no state may directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements." *Id.* The FDCA does not preempt "any state law unless expressly preempted…nor does it preempt state-law based causes of action that are identical to the federal labeling requirements." *Id.* at 770–771.

The FDCA regulations generally prohibit "statements that expressly or implicitly characterize the level of a nutrient"—called "nutrient content claims"—on food[3] labels, subject to certain exceptions. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (citing 21 C.F.R. § 101.13(b), (i)). Express nutrient content claims—"direct statements about the level (or range) of a nutrient in the food," 21 C.F.R. § 101.13(b)(1)—are allowed so long as they "do not in any way implicitly characterize the level of the nutrient in the food and ***are not false or misleading in any respect***." *Id.* at 962 (emphasis added). In other words, "a nutrient content claim fails if it is false or

---

[3] Dietary supplements are within the FDCA's broad definition of "food" in the context of nutrient content claim regulation. 21 C.F.R. § 101.13(a).

8

1  misleading in *any* respect." *Id.* (citing 21 C.F.R. § 101.13(i)(3) (emphasis in original).

2  Applying this framework, it is clear that Plaintiff's claims are not preempted. Both federal
3  and state law prohibit false or misleading nutrient content claims. 21 C.F.R. § 101.13(i)(3); Cal.
4  Health & Safety Code § 110765 ("Sherman Law") ("It is unlawful for any person to misbrand any
5  food."). Because the federal and state standards are functionally equivalent—*i.e.*, both apply a
6  "reasonable consumer" standard to false statements—preemption does not apply. *See Nicarino v.*
7  *Kashi Company*, 77 F.4th 1201, 1207 n. 19 (9th Cir. 2023); *Davidson v. Sprout Foods, Inc.*, 106
8  F.4th 842, 848 (9th Cir. 2024) ("Because the Sherman Law incorporates all the federal food labeling
9  requirements, it is identical to federal standards and not expressly preempted. It is expressly
10 permitted."); Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any
11 amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or
12 adopted on or after that date shall be the food labeling regulations of this state.").

13 Defendant attempts to avoid this conclusion by arguing that the nutrient content claim at
14 issue is expressly authorized by the FDCA. *Id.* at 12–15. Specifically, Defendant contends that the
15 claim of "with 4g[rams] prebiotic fiber" is allowed by the FDCA because it is based on the
16 "reference amount customarily consumed," *i.e.*, serving size, defined as the "maximum amount
17 recommended, as appropriate, on the label for consumption per eating occasion." *Id.* at 12–13
18 (citing 21 C.F.R. § 101.13(p)(1)); 21 C.F.R. § 101.13(b). And since four grams of fiber are included
19 with a serving, the nutrient content claim is lawful under the FDCA, thus immune from challenge
20 under state law, or so goes the theory. Motion at 13 (citing 21 C.F.R. § 101.12(g)).

21 But the Ninth Circuit differentiates between claims that challenge and seek to alter accurate
22 statements about serving size and the nutrient content thereof, and claims that a defendant's
23 "omission of supplemental or clarifying language" misleads consumers. *See Tarvin v. Olly Public*
24 *Benefit Corp.*, 756 F. Supp. 3d 797, 806 (C.D. Cal. 2024) (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958,
25 963–65 (9th Cir. 2016)). Both cases Defendant relies on in arguing for preemption involve the
26 former. Motion at 14 (citing *Pardini v. Unilever United States, Inc.*, 65 F.4th 1081 (9th Cir. 2023)
27 and *Nacarino v. Kashi Co.*, 77 F.4th 1201 (9th Cir. 2023)). For example in *Pardini*, that plaintiff
28 argued that the defendant had artificially deflated the serving size of the a spray-on butter substitute

9

by utilizing the reference amount for "spray type" products instead of the reference amount for butter in order to mislead consumers about its fat and calorie content. 65 F.4th at 1083–1084. The circuit panel concluded that defendants properly calculated the serving size using the reference amount for "spray type" products, and since plaintiff conceded that the calculation of fat and calories is correct if the serving size category is correct, the representations complied with federal law and the FDCA preempted plaintiff's claims *Id.* at 1091–92.[4] Plaintiff here is not seeking to alter how the serving size is calculated, nor how the fiber content of each serving is calculated. Plaintiff is making the straightforward argument that "the lack of clarifying language on the front label that would indicate that the advertised dosage is per serving, not per unit" renders the nutrient content claim false or misleading. *Tarvin*, 756 F. Supp. at 806. Preemption has been found not to apply to these sorts of claims. *See, e.g.*, *Hayde v. Arcadia Consumer Healthcare Inc.*, No. 8:24-cv-02657-JDE, 2025 WL 1386779, at *7–8 (C.D. Cal. Mar. 28, 2025).[5]

### C. Consumer Deception

Defendant seek dismissal of the California consumer protection claims under Rule 12(b)(6) on the theory that the labels by themselves cannot be viewed as misleading given the language used, and cannot be plausibly interpreted as misleading when viewed in connection with the nutritional information on the back label. Motion at 8–9. Again, the Court is unconvinced.

California's UCL, FAL, and CLRA outlaw the deception of consumers, through prohibitions on false advertising and advertising that is "either actually misleading or which has a capacity,

---

[4] In *Nicarino*, plaintiffs argued that the defendants' nutrient content claims regarding protein were false "because they inflate the nutritive value of low-quality protein" by using the "nitrogen method" of measurement instead of the "amino acid content" method that is more accurate. 77 F.4th at 1208–10. That circuit panel determined that the FDCA authorized quantitative protein content claims based on the nitrogen method so long as the nutritional facts label included the quality-adjusted protein content as a percent daily value. *Id.* at 1210. Put simply, the FDCA permitted calculating protein with the nitrogen method, which meant the nutrient claim was accurate, which meant that any state law claim was preempted.

[5] Defendant argues that it is entitled to the safe harbor protection because its conduct was "affirmatively permitted" under the FDCA. Motion at 15. For the same reasons that the FDCA does not preempt Plaintiff's claims discussed above, the safe harbor doctrine does not apply.

10

1  likelihood or tendency to deceive or confuse the public." *Whiteside v. Kimberly Clark Corp.*, 108
2  F.4th 771, 777 (9th Cir. 2024). Claims brought under these California consumer-protection statutes
3  are assessed under a "reasonable consumer" standard, meaning where a "reasonable consumer is
4  likely to be deceived." *Id.* at 777–778. Put differently, the question is whether a "significant portion
5  of the general consuming public or of targeted consumers, acting reasonably in the circumstances,
6  could be misled." *Id.* at 778. These kinds of claims are seldom susceptible to dismissal at the
7  pleading stage; appropriate only when "the advertisement itself makes it impossible for the plaintiff
8  to prove that a reasonable consumer is likely to be deceived." *Id.* (citing *Williams v. Gerber Prods.*
9  *Co.*, 552 F.3d 934 (9th Cir. 2008)).

10  Here, a reasonable consumer could very well read the words "organic fiber gummies"
11  immediately underlined with the words "***with*** 4 g[rams] prebiotic fiber" and believe—as Plaintiff
12  alleges to have believed—that each gummy contains four grams of fiber. Complaint ¶¶ 15, 33
13  (emphasis added). Contrary to Defendant's argument, this misperception does not require any
14  additional words to be implicitly projected by a consumer onto the label. To the contrary, it is
15  plausibly an unambiguous interpretation of the label based solely on the language used.

16  Defendant's second-line argument—that reasonable consumers would look at the back of the
17  labels to clear up any misunderstanding—fares no better. Motion at 8–9. For purposes of an initial
18  pleading challenge, a reasonable consumer need only inspect the back label if the front is
19  ambiguous. *Whiteside*, 108 F.4th at 778–779; *Walters v. Vitamin Shoppe Industries*, 701 Fed. Appx.
20  667, 670 (9th Cir. 2017). The Ninth Circuit recently addressed ambiguity vis-à-vis the "front-back
21  dichotomy" of labels and decided on a less restrictive approach, finding that a front label is
22  unambiguous for purposes of Rule 12(b)(6) analysis if a plaintiff has "plausibly alleged that a
23  reasonable consumer would view the label as having one unambiguous (and deceptive) meaning."
24  *Id.* at 780. As explained above, Plaintiff here has plausibly alleged that the front label "conveys a
25  concrete and unambiguous meaning to a reasonable customer" that one gummy contains 4 grams of
26  fiber. That is sufficient; no back label analysis required.

27  Similarly, the Court cannot conclude, at this pleading stage, that it is impossible for Plaintiff
28  to prove that a reasonable consumer is likely to be deceived by the "KIDS" label. It is certainly

plausible that a reasonable consumer could read the words "kids organic fiber gummies" and believe—as Plaintiff purportedly did—that there is something about this product that makes it especially suitable for kids.  Complaint ¶¶ 15, 35.  Defendant relies on several district court cases for the proposition that affixing "kids" to a product does not by itself imply that the product is formulated or otherwise particularly designed for kids.  Motion at 10–11.  But apart from the fact that these decisions are not binding, they in fact undercut Defendant's position.  At issue in each case were two products: one bearing a "Children" label and one bearing an "Infants" label.  *Hartwich v. Kroger Co.*, No. 8:20-cv-01253-JLS-DFM, 2021 WL 4519019, at *5–6 (C.D. Cal. Sept. 20, 2021); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643–644 (N.D. Cal. 2021).  The plaintiffs complained that they purchased the infants product believing the medicinal make-up of the product would be uniquely suited for infants.  *Hartwich*, 2021 WL 4519019 at *5; *Eidmann*, 522 F. Supp. 3d at 644.  But in those cases the different labels *did* represent a difference reflected in the products: the infants products contained an enclosed syringe to be used as the dosing mechanism—as opposed to a plastic cup in the children's products—that made the infant products better suited for infants.  *Hartwich* at *6 ("Rather, the label…clearly and prominently indicates it has qualities other than its pharmacological composition that make it more suitable for younger children…it is administered via the enclosed syringe…"); *Eidmann* at ("Thus, the infant-specific branding is less suggestive of a formulation specially designed for infants…rather it more reasonably pertains to the infant-specific dosing mechanism included to administer the product.").  Here, there is nothing, pharmacologically or otherwise, that differentiates the Fiber Gummies from the Kids Gummies.[6]

---

[6] The Court rejects on similar grounds Defendant's argument that Plaintiff's negligent and intentional misrepresentation and express warranty claims are "barred because she never pleads…that the Products' labeling statements are actually false." Motion at 15. Whether the statements are false in this context depend on the reasonable consumer.  Since Plaintiff has plausibly alleged that a reasonable consumer would be deceived, that is sufficient to allege falsity for Plaintiff's misrepresentation and express warranty claims. *See Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 906 (N.D. Cal. 2024) ("Returning to first principles, the question is…at bottom, whether the contract can be construed as including a sufficiently specific warranty that was breached...the Court has determined that one plausible interpretation of the [product's] label is that it promises twice the amount of [nutrient] as the regular product…[e]ven assuming the label could be interpreted differently, at the motion to dismiss phase, the Court must construe the representation in

### D.       Intentional Misrepresentation

To bring a claim for intentional misrepresentation, a plaintiff must prove "(1) a misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or scienter); intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *R Power Biofuels, LLC v. Chemex, LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *10 (N.D. Cal. Mar. 29, 2017); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); Cal. Civ. Code § 1709.

Defendant argues that Plaintiff insufficiently pled scienter by failing to allege "specific facts to suggest" fraudulent intent.  Motion at 16.  Not so.  Plaintiff alleges that Defendant made false representations about the nutrient content and child-specific suitability of the gummies at issue, Complaint ¶¶ 14, 18–26, to "trick consumers into thinking they are buying a product uniquely formulated for kids," *id.* ¶ 26, and to "mislead consumers into believing that the Products contain higher dosages" or more nutrients, or probiotics, *id.* ¶ 28, in pursuit of an "unfair advantage over its lawfully acting competitors," *id.* ¶ 31, at the expense of reasonable consumers and to maximize profits, *id.* ¶¶ 37, 39–44, 134, with "full knowledge or reckless disregard" of the falsity. *Id.* ¶ 37, 45, 131.  These allegations "state the time, place, and specific content of the false representations" and "set forth what is false or misleading about the statement, and why it is false." *Pegasus Trucking, LLC v. Asset Redeployment Group, Inc.*, No. CV 19-10339-PSG-(JEMx), 2021 WL 1234879, at * 2 (C.D. Cal. Feb. 16, 2021) (citing Fed. R. Civ. P. 9(b)).  That is all that is required at the pleading stage. *See DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 968 (N.D. Cal. 2023) ("The [complaint] adequately alleges [intentional misrepresentation].  It alleges that the packaging of the [products]…is false and misleading…that [defendant] knew that its packaging was false and misleading; that [defendant] intended to induce consumers to purchase the product at a premium price; that [plaintiff] and the putative class members justifiably relied on the packaging…and that [plaintiff] and the putative class members were damaged.").

### E.  Unjust Enrichment

---

the light most favorable to the Plaintiff.") (citation omitted).

13

Next, Defendant argues that Plaintiff's allegation that a contract exists by virtue of express warranty claim precludes Plaintiff from pleading a claim for unjust enrichment. Motion at 17.

"While there is no cause of action in California contract law labeled restitution for unjust enrichment, such claims may be construed as quasi-contract claims seeking restitution." *Etminan v. Alphatec Spine, Inc.*, 2024 WL 3941832, at *3 (S.D. Cal. Aug. 23, 2024) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). California courts are split on the availability of a claim for unjust enrichment in the face of a pleaded contract. *Compare Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389–90 (2012) *with Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal. App. 4th 221, 231 (2014).

District courts in the Ninth Circuit that have scanned the case law have landed on allowing quasi-contract/unjust enrichment claims to be pled alongside express contract claims in the alternative, with the recognition that a plaintiff would ultimately be barred from collecting on both. *See Cosmonova, LLC v. BioFilm, Inc.*, 763 F. Supp. 3d 1157, 1171 (S.D. Cal. 2025) ("Without definitively resolving the split, the Ninth Circuit has allowed unjust enrichment claims to proceed as an independent cause of action or alternatively a quasi-contract claim for restitution…[i]n such cases, a plaintiff may not recover on both claims that an enforceable, binding contract exists and unjust enrichment, but it may plead both as alternatives to one another.") (citation omitted); *see also Shah v. Capital One Financial Corporation*, No. 24-cv-05985-TLT, 2025 WL 714252, at *10 (N.D. Cal. Mar. 3, 2025). The Court agrees with this reasoning and will allow the pleading of this claim in the alternative.

**F. Economic Loss Rule**

Defendant also seeks dismissal of the fraud-based claims on the basis of the economic loss rule. Motion at 16. "In general, there is no recovery in tort for negligently inflicted purely economic losses, meaning financial harm unaccompanied by physical or property damage...[t]his general principle is the so-called economic loss rule…." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (citation omitted). There is an exception to the economic loss rule when the claim is premised on fraudulent inducement. *See id.* at 923; *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004) ("We hold that the economic loss rule does not bar Robinson's fraud and

intentional misrepresentation claims because they were independent of [defendant's] breach of contract.").

That exception applies here. Plaintiff's claim involves a form of promissory fraud that qualifies for the fraudulent inducement exception to the economic loss rule. *See e.g., Jacobs v. Sustainability Partners LLC*, 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020) ("Given *Lazar*[ *v. Superior Court*, 12 Cal. 4th 631, 638 (1996)]'s statement that a claim for promissory fraud does not depend on whether a defendant's promise is ultimately enforceable as a contract, the court finds persuasive the reasoning of *R Power Biofuels*[*, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *7 (N.D. Cal. Mar. 29, 2017)] and other courts…that found a promissory fraud claim for fraudulent inducement as sufficient to trigger an exception to the economic loss rule.").

### G. Punitive Damages

Finally, Defendant seeks dismissal of Plaintiff's claim for punitive damages. Motion at 17–18. But Defendant's argument reflects a fundamental misunderstanding of Rule 12(b)(6). A Rule 12(b)(6) motion is used to dismiss ***claims***, not remedies. "Punitive damages are but a remedy," and since a request of such "neither constitutes a claim nor pertains to whether any claim has been stated," there is "no basis for dismissal under Fed.R.Civ.P. 12(b)(6)." *Oppenheimer v. Sw. Airlines Co.*, No. 13-CV-260-IEG-BGS, 2013 WL 3149483, at *4 (S.D. Cal. June 17, 2013); *see also Elias v. Navasartian*, No. 1:15-CV-01567-LJOG-SAPC, 2017 WL 1013122, at *4 (E.D. Cal. Feb. 17, 2017), report and recommendation adopted, No. 1:15-CV-01567-LJOG-SAPC, 2017 WL 977793 (E.D. Cal. Mar. 13, 2017) ("a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim."); *Andrew Thompson, et al. v. State Farm Gen. Ins. Co., et al.*, No. ED-CV 24-0811-KK-DTBX, 2024 WL 3447989 (C.D. Cal. June 3, 2024) ("the court does not find Plaintiffs' request for punitive damages is subject to dismissal on a motion to dismiss."). The Court will not dismiss a potential remedy at the pleadings stage.

### V.   CONCLUSION

For the foregoing reasons, Defendant's motion is denied.

15

Dated: June 4, 2025

_____
Hernán D. Vera
United States District Judge